EMERSON & NORRIS CO. v. SIMPSON BROS. CORPORATION.

SIMPSON BROS. CORPORATION v. EMERSON & NORRIS CO.

(Circuit Court of Appeals, First Circuit. May 21, 1914.)

Nos. 1050, 1051.

1. PATENTS (§ 325*)—SUIT FOR INFRINGEMENT—COSTS.

On an accounting for damages and profits, following a decision on the merits in 202 Fed. 747, held, that the patent in suit was limited to molds made substantially of sand, as described in the opinion.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 607–612; Dec. Dig. § 325.*]

2. APPEAL AND ERROR (§ 1022*)—REVIEW—FINDINGS OF FACT.

The rule applied that, where a District Court has concurred with the findings of a master on questions of fact, such findings should not be disregarded by an appellate court, except for strong reasons. See Texas & P. R. Co. v. Railroad Commission, 232 U. S. 338, 34 Sup. Ct. 438, 58 L. Ed. ——.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4015–4018; Dec. Dig. § 1022.*]

3. WORDS AND PHRASES—"SAND."

"Sand" is a water-worn detritus finer than that to which the name "gravel" would ordinarily be applied.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6326, 6327.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeals from the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Suit in equity by the Emerson & Norris Company against the Simpson Bros. Corporation. From a decree awarding damages and costs, both parties appeal. Affirmed.

See, also, 202 Fed. 747, 121 C. C. A. 113.

R. A. Parker, of Detroit, Mich., and Louis W. Southgate, of Worcester, Mass., for plaintiff.

Laurence A. Janney, of Boston, Mass. (Frederick L. Emery and Emery, Booth, Janney & Varney, all of Boston, Mass., on the brief), for defendant.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. [1] These are cross-appeals growing out of the judgment we entered with reference to the same litigation on January 30, 1913, directing a decree in favor of the Emerson & Norris Company against Simpson Bros. Corporation for an injunction and an accounting. On the mandate being filed in the District Court a master was appointed, who made a report in favor of Emerson & Norris Company carrying comparatively small damages, which report was accepted by the District Court, and a judgment was entered with costs in favor of Emerson & Norris Company to and including the mandate heretofore sent down for both the District Court and this court. Costs, however, were awarded by the District Court in favor of Emerson & Norris Company for only one-thirteenth of the costs before the master. Both parties appealed from the allowance of costs. The principle on which only one-thirteenth of the costs before the master was taxed against Simpson Bros. Corporation was that at the hearing before the master which was strenuous and long continued, and in the main resulted against Emerson & Norris Company, only a small portion of what they claimed being allowed, as we will show later on, they had attempted to raise again an issue which the mandate had settled. Simpson Bros. Corporation appealed against any allowance of costs, claiming that at least the same apportionment of costs should apply to the costs to and including the time when the prior mandate went down from us; but the rules applicable thereto are fundamentally different. On general rules the original complainant, having recovered something, was entitled to full costs to the time of our first mandate, while the course taken by it since that mandate enables us, according to equitable rules, to approve the apportionment of costs made by the District Court. Therefore we affirm the decision of the District Court as to costs in all respects.

We will next take the appeal of Simpson Bros. Corporation on the merits, because it is easily disposed of. It may be, and it is probable, that the amount of damages awarded by the District Court exceeded in some particulars a just amount; but Simpson Bros. Corporation concluded its brief as follows:

"On the whole case, therefore, we submit that no course remains but for this court to adopt the findings of fact by the master, confirmed by the District Court, and then, by merely reiterating its opinion, to resolve all questions and to settle this litigation once and for all."

We regard this, and justly so, as waiving any claims that Simpson Bros. Corporation had, if any, on these appeals, except as to the mere matter of costs.

[2, 3] This leaves us to take up the appeal by Emerson & Norris Company, whose proceedings before the master, and here, are based on a grave misunderstanding of what was clearly decided by us according to our prior mandate. We will start with the proposition that the matters now involved are strictly questions of fact. Not only this, but the facts are of a mechanical or chemical nature, not ordinarily within the cognizance of the court, even so far as they may be experts with reference to any question which may come before them as triers of facts. This is particularly so with regard to the use of the word "sand" in the claims in issue here. Yielding to the fact that these claims are addressed to the practical art of foundrymen, we lean towards the construction of the word "sand" as it would be understood by them, that is, molding sand; but just what molding sand is, even for foundrymen, seems to be looked at from different standpoints. It is ordinarily supposed to contain a minimum of loam, or almost invisible vegetable growths which incline towards practically adhering to each other when somewhat moistened. Sand proper is, as shown by the definitions found in the briefs here, the result of attrition, or a "water-worn detritus finer than that to which the name gravel would ordinarily be applied"; and it sometimes lies in beds or sheets so solid that it seems to be preparing to return to its condition of ledge or rock. Sands that are understood as molding sands have different aspects with different foundrymen, and with different makers of encyclopedic and other dictionaries; and, also, the proportion of talc as a binder is somewhat differently understood. At any rate, all these things mean a certain amount of peculiar investigation of facts which are particularly of the class as to which the concurrence of two tribunals below is very impressive, although one of the tribunals is only a master in chancery or referee in bankruptcy, the latest illustration of which class is shown in Texas & Pacific Railway v. Railroad Commission, 232 U. S. 338, 34 Sup. Ct. 438, 58 L. Ed. ——, decided on February 24, 1914. In this case we have the concurrence of a master in chancery known to us to be a master of integrity, ability, and experience, with the learned judge of the District Court; and the result impresses us very gravely, and should not be disregarded except for reasons much stronger than any which we find.

Now, we have said that the component on which the complainant relies was, as shown in its claims, relatively dry sand, which "sand absorbs the surplus moisture from the compound." As said by the master in this case, we held it strictly to this proposition, and so strictly that we ruled as follows:

"It is not important for this part of the case that we should point out again that Sellar's invention was for a mold or molds and not for a process; but wherever it appears, and from every point of view, it was for a mold of composite material. A comparison of these claims with the simple claim of the patent in this case at once makes clear the real issue here. The latter claim gives no material for the mold except molding sand, which is to be relatively dry, expressly operating by absorption."

We especially made this emphatically and strikingly clear by the citation in our prior opinion from the expert Carpenter, in the following language:

"The fact that a dampened sand mold would hold its shape, and at the same time absorb water so as to compact a nearly liquid stone compound, is certainly a phenomenon which would never have been believed had it not been tried."

Under the ruling of the District Court, the complainant was not entitled to recover except for the use of molds made of sand as described by us and by the patentee's claim, without anything in the nature of a binding unless of a negligible amount. The following facts appear from the report of the master, as confirmed by the court:

The respondent found that it could not manufacture the product required successfully by the process invented by Stevens, as we have described it; and, after an unsuccessful attempt to the contrary, the respondent adopted the method pointed out by one Walter P. Butler in a patent issued to him on August 22, 1905, for a process of making artificial stone. This patent described the process at much length, involving many details with which we are not concerned; but it described the elements of the whole as follows:

"The addition to and as a part of a molding compound of the powdered mineral substances having soapy, sticky, smooth, or slippery properties, such as are possessed by talc and soapstone, forms a perfect substitute for loam, and causes the particles of sand to cohere or stand up when slightly moistened, and thus it is possible with such a compound to make clean-cut, sharp, smooth and perfect molds, such as could not heretofore be made in the sand alone."

For the comparatively small amount of the respondent's product, made according to the process patented by Stevens, the master and the court awarded against the respondent $164.79. This relieved the respondent from all liability for the product obtained by it under the alleged process according to Butler's patent. This was based on the conclusion that, according to the process shown by Butler's patent, the respondent used talc or some other binder to a practical and efficient amount. We do not find enough in the record to justify our reversing the result reached by them.

As the only question which it is apparent from this opinion was involved is one purely of fact, so that the result can never amount to a precedent of any consequence, we do not deem it worth while to follow the topic further.

As neither party can be said to have prevailed substantially over the adverse party on these appeals, the judgment in each case is:

The decree of the District Court appealed from is affirmed, and neither party recovers any costs on appeal.